United States District Court
Southern District of Texas
**ENTERED**
March 15, 2017
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MARK ANTHONY TILLMAN, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-0107 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| *Respondent*. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate proceeding *pro se*, filed this section 2254 habeas petition challenging his conviction and life sentence without parole for capital murder.  Respondent filed a motion for summary judgment (Docket Entry No. 15), to which petitioner filed a response (Docket Entry No. 19).

Having reviewed the motion, the response, the record, the pleadings, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons that follow.

### *Background and Claims*

Petitioner was convicted of capital murder in Harris County, Texas, and sentenced to automatic life incarceration without parole in May 2013.  The conviction was affirmed on appeal, *Tillman v. State*, 426 S.W.3d 836 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd), and the Texas Court of Criminal Appeals refused discretionary review.  *Tillman v. State*, No.

PD-0295-14 (Tex. Crim. App. Apr. 30, 2014). Petitioner's application for state habeas relief was denied in December 2015.

Petitioner raises the following grounds for federal habeas relief:

(1)    The evidence is insufficient to support his conviction.

(2)    Trial counsel was ineffective in

    a.    failing to investigate evidence showing that he had no intent to kill the victim;

    b.    failing to object to the trial court's violation of Texas Code of Criminal Procedure article 36.27;

    c.    failing to object to the automatic punishment of life imprisonment without parole; and

    d.    failing to present mental illness evidence at the suppression hearing.

(3)    Appellate counsel was ineffective in failing to raise violation of Texas Code of Criminal Procedure article 36.27.

Respondent argues that these claims are without merit and should be dismissed.

### *Factual Background*

The intermediate state court of appeals set forth the following statement of facts in its opinion affirming petitioner's conviction.

Complainant, Euland Laster, was found bleeding and lying in the street in a residential neighborhood in Houston, Texas on November 10, 2010. The bleeding was a result of blunt-force trauma that Laster had received. He was taken in an ambulance to a hospital but died before he arrived. Laster was 65.

Police investigators determined Laster's credit card and car had been stolen. In the course of their investigation, they were contacted by Timka Carper.

Carper was a friend of Kendrick Jacobs's.  The day after Laster was attacked, Jacobs told Carper of his involvement in the crime.  Jacobs called [petitioner] on his cell phone, using the speaker to hear [petitioner].  Carper heard the conversation.  In it, [petitioner] acknowledged hitting Laster.  [Petitioner] asserted he did not try to kill Laster.  Laster had been calling for help, and [petitioner] explained he hit Laster because he wanted him to be quiet.  [Petitioner] stated that Laster was moving too slow to get away.  He admitted that he did not know if Laster had died or not.  Carper told the police what she heard in the conversation.

The investigators also obtained information on the crime from [petitioner's] mother and brother.  Following that meeting, on November 17, 2010, Officer D. Arnold and Officer Lovelace went to the Ben Taub Neuropsychiatric Center, where [petitioner] had earlier checked himself in voluntarily.  [Petitioner] met with Officers Arnold and Lovelace.  [Petitioner] admitted to his involvement in the crime, including hitting Laster with a hammer.  [Petitioner] described it as a hard plastic or fiberglass hammer.  [Petitioner] again asserted, however, that he did not intend to kill Laster.

At trial, Dr. M. Anzalone, a medical examiner, testified that Laster had been hit ten times with a blunt object.  The injuries were consistent with blows from a hammer.  Two of the blows were on one of Laster's legs.  Three were on his back.  One was on his back shoulder.  Another was on his clavicle, which broke as a result of the impact.  One was on his chest, with another on his chest consistent with a blow from the claw portion of a hammer.  Finally, one blow was to the head, causing a fracture of the skull.  Dr. Anzalone testified that the injuries to the head "would be consistent with a significant amount of force."  Each of these blows caused blood loss.

Dr. Anzalone also determined that Laster had "very severe and very significant" heart disease.  She testified that the heart disease along with the blood loss resulting from the blows from the hammer were contributing factors for Laster's death.  During direct examination, the prosecutor asked, "If [Laster] had not had heart disease, could it have been possible that he could have survived these injuries?"  Dr. Anzalone replied, "Yes."  During cross examination, she explained that, if Laster had not had heart disease, that "doesn't necessarily mean that he wouldn't have died."  Instead, "[t]there is no way to know precisely" how significant Laster's heart disease was in his death.

Dr. M. Wheeler, the Chairman of the Department of Pathology and Immunology at Baylor College of Medicine, testified for [petitioner].  He agreed that Laster had "very severe" heart disease that "involve[d] all three of the major vessels."  The left anterior descending coronary artery—which Dr. Wheeler testified was commonly referred to as "the widow maker" for heart disease—was 85% narrowed.  Another artery was 50% narrowed, and the third was 90% narrowed.

Dr. Wheeler testified, "Even though [Laster] may have been walking around and appeared normal, his severe underlying heart disease made him, in effect, a walking time bomb."  He explained that, when a person is attacked, this triggers an adrenaline rush.  The adrenaline increases the work of the heart and, for people with heart disease, can lead to heart complications.  If the blood vessels cannot accommodate the increased flow of blood, the oxygen necessary for the heart to function properly cannot reach the heart, which leads to an irregular heartbeat, or arrhythmia.  Once the heart chambers are not beating in rhythm, "there is no blood supply being given to the rest of the body; and the patient dies."

Dr. Wheeler also testified that the estimated amount of blood that Laster lost was "not a fatal thing in and of itself" for a person without heart disease.  But for someone like Laster, "it can be a devastating condition to lose that much blood when you have that underlying heart disease."  Dr. Wheeler testified that if Laster "had been younger or not had heart disease, I would suspect that those injuries would not have been fatal."

After Wheeler's testimony, the State recalled Dr. Anzalone.  She testified that she did not disagree with Dr. Wheeler.

*Tillman*, 426 S.W.3d at 838–39.

### *The Applicable Legal Standards*

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U .S.C. § 2254.  Under the AEDPA,

federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It

5

preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

*Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant

probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings.  Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant.  Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court.  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### *Insufficiency of the Evidence*

Petitioner claims that the evidence is insufficient to support his capital murder conviction because the state failed to prove that he specifically intended to kill the victim.

In determining an insufficiency claim, a federal habeas court must consider whether, viewing the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Dupuy v. Cain*, 201 F.3d 582, 589 (5th Cir. 2000). This inquiry must be conducted with "explicit reference to the substantive elements of the

criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16.  And all credibility choices and conflicting inferences are to be resolved in favor of the verdict.  *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999); *United States v. Nguyen*, 28 F.3d 477, 480 (5th Cir. 1994).  The *Jackson* standard applies in both direct and circumstantial evidence cases.  *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990).

The intermediate state court of appeals in the instant case rejected petitioner's claim of insufficient evidence, and affirmed the conviction on direct appeal.  The state court specifically found the evidence sufficient under the *Jackson* standard in light of state criminal substantive law, and held as follows:

> As it pertains to appellant, "[a] person commits an offense if the person commits murder as defined under Section 19.02(b)(1) and . . . the person intentionally commits the murder in the course of committing . . . robbery[.]" TEX. PENAL CODE ANN. § 19.03(a)(2).  Murder as defined by section 19.02(b)(1) of the Texas Penal Code is "intentionally or knowingly caus[ing] the death of an individual."  Because section 19.03(a)(2) requires the murder to be committed intentionally, the "knowingly" *mens rea* in section 19.02(b)(1) is not available to support a conviction.  "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a).
>
> Appellant asserted that he did not intend to kill Laster but only meant to make him be quiet. The jury was free to disbelieve this evidence.  Disbelief of certain testimony, however, cannot stand in as proof of the opposite of that testimony.
>
> The State argues that the jury could have inferred the intent to kill from the use of a deadly weapon.  We cannot agree that this line of legal reasoning applies in this circumstance.

The Texas Penal Code includes two definitions of what constitutes a deadly weapon.  First, a deadly weapon is "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(A).  Second, a deadly weapon is also "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B).

All of the cases that the State relies on to argue that an inference to support an intent to kill can be drawn by the use of a deadly weapon are cases in which the weapon was a deadly weapon under the first definition.  It is certainly reasonable to allow a jury to infer that a person who used something "manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" intended to kill the person on whom the weapon was used.

In contrast, the second definition of what can cause a deadly weapon encompasses anything that is capable of causing death or serious bodily injury in the manner of its use.  TEX. PENAL CODE ANN. § 1.07(a)(17)(B).  The possibilities for what fits within this definition are almost limitless.  Under this definition of deadly weapon, "the injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used."

If any object is used in a manner that ultimately brings about a person's death, then, the object can be inferred to be a deadly weapon. If we adopted the State's reasoning and allow a further inference in this circumstance that intent to commit murder can be inferred by use of the deadly weapon, we would, in effect, allow the jury to infer the intent to kill from the bare fact that the victim died. Allowing such an inference would excuse the State from meeting its burden of showing that defendants in these circumstances intentionally committed murder.  We cannot reach such a conclusion.

A hammer is not manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury. It is a deadly weapon in this circumstance because it was used in a manner "capable of causing death or serious bodily injury." Accordingly, the State cannot rely on an inference that, because he used a deadly weapon, appellant intended to commit murder.

This is not to say, however, that the circumstances of Laster's death and the nature of the injuries inflicted by appellant cannot be a basis for the jury to

9

infer appellant's intent.  Undoubtedly, they can.  Instead, we hold only that the State cannot rely on the use of a deadly weapon in this circumstance to establish an inference of intent to commit murder.

Turning to the circumstances of Laster's death and the nature of the injuries inflicted by appellant, we acknowledge, as appellant argues, that the circumstantial proof of intent is somewhat clouded by the fact that Laster's heart disease played at least some role in his death.  There is no indication in the record that appellant had any way of knowing Laster's heart condition or how it would weaken Laster's ability to withstand an attack that another man of the same age might be able to survive.  Nevertheless, the evidence does establish that appellant struck Laster in the head with a hammer.  The only description of the hammer came from appellant.  Appellant told the police officers who questioned him that it was either a hard plastic or fiberglass hammer. The blow was forceful enough to fracture appellant's skull, an amount of force that the medical examiner described as significant. In addition, the evidence establishes that appellant hit Laster twice in the chest. Both were in approximate vicinity of the heart. One of the blows was likely caused by the claw portion of the hammer. A fourth blow was to the left clavicle with enough force to break it.

The totality of the circumstances establishes that appellant delivered a blow to the head significant enough to fracture Laster's skull, two blows to the chest near the heart—including a gouging blow with the claw end of the hammer—and a fourth blow in an area directly in between the head and chest. In addition, appellant hit Laster six additional times on the back and legs.

Furthermore, there is evidence in the record that appellant stated afterwards that he did not know if Laster lived or died. This indicates that appellant was aware that he was delivering blows sufficiently hard to enough sensitive areas that he could have killed Laster.  We hold, then, that the cumulative force of all of this evidence can support an inference by the jury that appellant intended to kill Laster.  Accordingly, we hold that there was sufficient evidence in the record for the jury to have found that each essential element of the charged offense was proven beyond a reasonable doubt.

*Tillman*, 426 S.W.3d at 840–842 (citations, footnote omitted).

This Court has carefully reviewed the record and finds that petitioner fails to meet his burden of proof under AEDPA's limited scope of review. His disagreements with the jury's verdict, the court of appeals's decision, and the state habeas court's findings do not warrant federal habeas relief. Petitioner fails to show that the state court's denial of relief was contrary to, or an unreasonable application of, clearly established federal law, and respondent is entitled to dismissal of this claim.

### *Ineffective Assistance of Trial Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id*. at 687. The failure to demonstrate deficient performance or prejudice is fatal to a *Strickland* claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996).

11

To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

The Supreme Court recently emphasized in *Richter* the manner in which a federal court is to consider an ineffective assistance of counsel claim raised in a habeas petition subject to AEDPA's limitations:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and

latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (internal quotation omitted).

In the context of reviewing claims of ineffective assistance, the Supreme Court and Fifth Circuit have directed federal habeas courts to exercise great caution to avoid the distorting effects of hindsight.  *See Premo v. Moore*, 562 U.S. 115 (2011) ("In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel."); *Bell v. Cone*, 535 U.S. 685, 698 (2002) (confirming that judicial scrutiny of a counsel's performance must be highly deferential and that every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time).

Petitioner claims that trial counsel was ineffective in the following particulars.

*Failure to Investigate*

Petitioner claims that trial counsel failed to investigate evidence showing that he had no intent to kill the complainant.  He specifically claims that trial counsel failed to investigate the complainant's autopsy report.

In responding to this claim, trial counsel testified in an affidavit submitted to the state trial court that, "My investigation of the case included a complete review of the state's file.

13

I reviewed all witness statements and reports contained in the state's file.  I did not believe that a visit to the scene of the offense was necessary.  My investigation was not limited in anyway."  (Docket Entry No. 16-21, p. 117.)  Trial counsel further testified as follows:

> 3.      My trial strategy was two-fold. I thought it was important to lessen a jury perception that he was more dangerous than he was.  I also tried to use as much of [petitioner's] defensive theory as possible. His theory was that he struck the complaining witness with a hammer in order to knock him down so that the co-defendant would not shoot the victim. His confession supported his defensive theory of the case.

> 4.      [Petitioner's] confession supported his defensive theory of the case. [He] stated that he did not intend to kill the complaining witness.

*Id*.

The state trial court found that trial counsel's affidavit was credible and that the facts asserted therein were true.  *Id*., p. 122.  The court noted that the autopsy report was introduced into evidence.  The state trial court further concluded that petitioner failed to meet his burden of proof under *Strickland*, and that he was not denied the effective assistance of trial counsel.  *Id*., p. 123.  The Texas Court of Criminal Appeals relied on the trial court's findings of fact and conclusions of law in denying habeas relief.  (Docket Entry No. 16-19, p. 1.)

Petitioner's allegation that trial counsel failed to investigate the autopsy report prior to trial is conclusory and unsupported by any probative evidence in the record.  Conclusory allegations on a critical issue are insufficient to raise a constitutional issue.  *Koch v. Puckett*,

907 F.2d 524, 530 (5th Cir. 1990).  Petitioner establishes neither deficient performance nor actual prejudice, and habeas relief is unwarranted.

The state court on collateral review rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of this claim.

*Failure to Object as to Art. 36.27*

Petitioner argues that trial counsel should have objected to the trial court's violation of Texas Code of Criminal Procedure article 36.27.[1]  According to petitioner, article 36.27 required the trial court to provide the jury with any requested exhibits.  He contends the jury requested certain exhibits, but that the record is silent as to whether they were provided.  He further argues that the trial court failed to respond in writing to the jury's note requesting the exhibits.

---

[1]Under article 36.37, the trial court is required to answer communications from the jury during deliberations in writing and to use "reasonable diligence to secure the presence of the defendant and his counsel, . . . submit the question and . . . answer to the . . . defendant or his counsel or objections and exceptions, in the same manner as any other written instructions are submitted to such counsel, before the court gives such answer to the jury . . . ."  TEX. CRIM. PROC. CODE art. 36.27.

In responding to this argument, trial counsel testified in his affidavit submitted to the state trial court that he had no recollection of the trial court refusing the jury's request to inspect evidence during deliberations.  (Docket Entry No. 16-21, p. 117.)

The state trial court found that trial counsel's affidavit was credible and that the facts asserted therein were true.  *Id*., p. 122.  The state trial court further concluded that petitioner failed to meet his burden of proof under *Strickland*, and that he was not denied the effective assistance of trial counsel.  *Id*., p. 123.  The Texas Court of Criminal Appeals relied on the trial court's findings of fact and conclusions of law in denying habeas relief.  (Docket Entry No. 16-19, p. 1.)

The record shows that, during trial, the jury send a note to the trial court requesting certain trial exhibits.  Petitioner complains that the trial record does not show that the trial court responded in writing to the note, as is required by article 36.27.  (Docket Entry No. 16-1, p. 71.)  The trial record itself does not encompass any transcription of events between the time the jury was sent to deliberate and the jury's reaching a verdict.  (Docket Entry No. 16-6, p. 58.)  However, trial counsel stated in his affidavit that he had no recollection of the trial court refusing any request by the jury to inspect exhibits during deliberations.

To any extent that the jury's request to inspect certain exhibits was governed by article 36.27, petitioner fails to establish ineffective assistance of counsel.  He does not meet his burden of showing that, but for counsel's failure to object to lack of a written response by

16

the trial court, there is a reasonable probability that the result of the trial would have been different.  Petitioner demonstrates neither deficient performance nor actual prejudice.

The state court on collateral review rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of this claim.

### *Failure to Object to Life Without Parole*

Petitioner next asserts that trial counsel was ineffective in failing to object to his automatic punishment of life imprisonment without parole.  He claims that statutory automatic sentence denied him the right to present mitigating evidence on his behalf.

The state trial court found that petitioner's sentence was within the lawful range of punishment for capital murder.  (Docket Entry No. 16-21, p. 122.)  The state trial court further concluded that petitioner failed to meet his burden of proof under *Strickland*, and that he was not denied the effective assistance of trial counsel.  *Id*., p. 123.  The Texas Court of Criminal Appeals relied on the trial court's findings of fact and conclusions of law in denying habeas relief.  (Docket Entry No. 16-19, p. 1.)

As found by the state court, imposition of life without parole was within the range of punishment applicable to petitioner's criminal offense, and was not inherently objectionable.  Counsel is not required to file frivolous motions or make frivolous objections.  *Green v.*

17

*Johnson*, 160 F.3d 1029, 1037; *McCoy v. Lynaugh*, 874 F.2d 954, 963 (5th Cir. 1989).  It is well settled that the failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness.  *Green*, 160 F.3d at 1037.  Nor does petitioner show that, had counsel raised the objection, it would have been granted.

Regardless, the Supreme Court has held that the mandatory imposition of life without parole, without any consideration of mitigating factors, does not violate the Eighth Amendment's prohibition against cruel and unusual punishment.  *Harmelin v. Michigan*, 501 U.S. 957, 995 (1997) (refusing to extend the "individualized capital sentencing doctrine" to an "individualized mandatory life in prison without parole sentencing doctrine").

The state court on collateral review rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of this claim.

*Failure to Present Evidence of Mental Illness*

Petitioner alleges that trial counsel failed to present evidence of petitioner's mental illness at the suppression hearing.

In responding to this allegation, trial counsel testified in his affidavit that, "I believed that the introduction of [petitioner's] mental illness history could not help in his suppression

hearing and might actually make him appear more dangerous." (Docket Entry No. 16-21, pp. 117–18.)

The state trial court found that trial counsel's affidavit was credible and that the facts asserted therein were true. *Id*., p. 122. The state trial court further found that trial counsel's decision to not introduce petitioner's mental illness history was a strategic decision. *Id*. The state trial court concluded that petitioner failed to meet his burden of proof under *Strickland*, and that he was not denied the effective assistance of trial counsel. *Id*., p. 123. The Texas Court of Criminal Appeals relied on the trial court's findings of fact and conclusions of law in denying habeas relief. (Docket Entry No. 16-19, p. 1.)

Judicial scrutiny of counsel's performance must be highly deferential, making every effort to "eliminate the distorting effects of hindsight," and there is a strong presumption that strategic or tactical decisions made after an adequate investigation lie within the wide range of an objectively reasonable performance. *Strickland*, 466 U.S. at 689. A conscious and informed decision of trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel "unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *United States v. Holmes*, 406 F.3d 337, 360 (5th Cir. 2005). Conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

The record before this Court provides no basis to overcome the strong presumption in favor of finding that trial counsel provided adequate assistance and that the challenged

conduct was the product of reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996).

The state court on collateral review rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

### Ineffective Assistance of Appellate Counsel

Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985). This Court reviews counsel's appellate performance under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998). Petitioner must allege and present facts showing that his appellate counsel's representation was deficient and that the deficient performance caused him prejudice. That is, petitioner must show that, but for appellate counsel's deficient performance, the outcome of the appeal would have been different. *See Strickland*, 466 U.S. at 687–88, 692; *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998). Effective assistance of appellate counsel does not mean that counsel will raise every available non-frivolous ground for appeal. *Evitts*, 469 U.S. at 394. Nor will counsel be deficient for failing to press a frivolous point. Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *Evitts*, 469 U.S. at 394. A reasonable attorney has an obligation to research relevant facts and law and

make informed decisions as to whether avenues will, or will not, prove fruitful.  *Strickland*, 466 U.S. at 690–91.

Petitioner complains that appellate counsel failed to raise the trial court's violation of Texas Code of Criminal Procedure article 36.27.  He contends that, had this issue been raised on direct appeal, it would have been granted and his conviction or sentence would have been set aside.  However, no objection to any violation of article 36.27 appears in the record.  Under the contemporaneous objection rule, petitioner waived any error by failing to object.  *See Amos v. Scott*, 61 F.3d 333, 341 (5th Cir. 1995).  Moreover, under Texas state law, a trial court's violation of article 36.27 does not constitute reversible error except in very limited circumstances that have no application here.  *See Nacol v. State*, 590 S.W.2d 481, 486 (Tex. Crim. App. 1979) ("[A] communication between the judge and the jury, although not in compliance with Article 36.27 . . . is not reversible error unless it amounts to an additional instruction by the court upon the law or some phase of the case.").  Petitioner fails to show that, but for appellate counsel's failure to raise the issue, there is a reasonable probability that the result of the appeal would have been favorable to petitioner.

The state court on collateral review rejected petitioner's claims of ineffective assistance and found that appellate counsel was not ineffective.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of this claim.

### *Conclusion*

The motion for summary judgment (Docket Entry No. 15) is GRANTED and this habeas lawsuit is DISMISSED WITH PREJUDICE.  Any and all other pending motions are DENIED AS MOOT.  A certificate of appealability is DENIED.

Signed at Houston, Texas on March 15, 2017.

_____
Gray H. Miller
United States District Judge